**JENNER & BLOCK LLP**
Kenneth K. Lee (Cal. Bar No. 264296)
klee@jenner.com
Kelly M. Morrison (Cal. Bar No. 255513)
kmorrison@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071-2054
Phone:     (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (admitted *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Phone:     (312) 222-9350
Facsimile: (312) 527-0484

Attorneys for Defendant
Kraft Foods Group, Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CLAUDIA MORALES and MOCHA GUNARATNA, each individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>KRAFT FOODS GROUP, INC. and DOES 1 through 100, inclusive,<br><br>                Defendants. | Case No. 14-cv-04387-JAK-PJW<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Request for Judicial Notice and [Proposed] Order submitted concurrently herewith]<br><br>Hearing Date: September 29, 2014<br>Time: 8:30 a.m.<br>Courtroom: 750 – 7th Floor<br>Judge: Hon. John A. Kronstadt<br><br>Action removed: June 6, 2014 |

* * *

PLEASE TAKE NOTICE that, on September 29, 2014, at 8:30 a.m., or as soon thereafter as the Court is available, in Courtroom 750 of the Edward R. Roybal Federal Building and United States Courthouse located at 255 East Temple Street, Los Angeles, California 90012, Defendant Kraft Foods Group, Inc. will and hereby does move the Court to dismiss this action pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), on the grounds that (1) Plaintiffs' Complaint fails to state a plausible legal claim, and (2) Plaintiffs have failed to plead their claims with the requisite particularity.

Defendant's Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, any additional briefing on this subject, and the evidence and arguments that will be presented to the Court at the hearing on this matter.

Dated:  July 9, 2014                JENNER & BLOCK LLP

                                     /s Kenneth K. Lee
                                    By: Kenneth K. Lee

                                    Attorneys for Defendant
                                    Kraft Foods Group, Inc.

1

## TABLE OF CONTENTS

2   INTRODUCTION ..................................................................................... 1

3   BACKGROUND ...................................................................................... 2

4       I.    Plaintiffs' Bare-Bones Allegations ............................................ 2

5       II.   The Phrase "Natural Cheese" Has a Clearly Defined Meaning........... 3

6   ARGUMENT ........................................................................................... 4

7       I.    Plaintiffs Fail to Plausibly Allege that a "Significant Portion of the
8           General Consuming Public" Would Be Deceived by "Natural
        Cheese".......................................................................................... 5

9
           A.    Consumers, Federal Agencies, and the Industry Recognize
10                 that "Natural Cheese" Distinguishes a Product from
11                 "Processed Cheese" ..................................................... 6

12              B.    Consumers are Not Likely to Be Deceived by the Term
              "Natural Cheese" on the Label of Kraft Shredded Fat Free
13                 Cheddar Cheese .......................................................... 7

14       II.   Plaintiffs Fail to Plead their Claims with the
15           Requisite Particularity.......................................................... 11

16   CONCLUSION ....................................................................................... 14

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

CASES                                                                        PAGE(S)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................4, 5

*Balser v. Hain Celestial Group, Inc.*,
    No. 13-5604, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ............................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................4

*Bishop v. 7-Eleven, Inc.*,
    No. 12-2621, 2013 WL 4014174 (N.D. Cal. Aug. 5, 2013)...............................12

*Bruton v. Gerber Products Co.*,
    961 F. Supp. 2d 1062 (N.D. Cal. 2013)......................................................10, 13

*Cadlo v. Owens-Illinois, Inc.*,
    125 Cal. App. 4th 513 (2004) ...................................................................13

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ..................................................................5

*City of Arcadia v. U.S. Envtl. Prot. Agency*,
    411 F.3d 1103 (9th Cir. 2005) ..................................................................4

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ..................................................................4

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) .....................................................................5

*Hairston v. S. Beach Beverage Co.*,
    No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................5, 6, 10

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) .................................................................6

*Jones v. ConAgra Foods, Inc.*,
    No. 12-1633, 2014 WL 2702726 (N.D. Cal. June 13, 2014) .............................7

*Kane v. Chobani, Inc.*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) ...................................................... 10, 12

*Kane v. Chobani, Inc.*,
   No. 12-2425 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ........................... 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ...................................................................... 5, 13

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ............................................................................ 5

*Maple v. Costco Wholesale Corp.*,
   No. 12-5166, 2013 WL 5885389 (E.D. Wash. Nov. 1, 2013) ........................... 13

*McKinniss v. Gen. Mills, Inc.*,
   No. 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ........................... 10

*Park v. Welch Foods, Inc.*,
   No. 12-6449, 2013 WL 5405318 (N.D. Cal. Sept. 26, 2013) ........................... 11

*Pelayo v. Nestle USA, Inc.*,
   --- F. Supp. 2d ----, 2013 WL 5764644 (C.D. Cal. 2013) ............................... 8, 9

*Rooney v. Cumberland Packing Corp.*,
   No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ................................... 7

*Smedt v. Hain Celestial Grp., Inc.*,
   No. 12-3029, 2013 WL 4455495 (N.D. Cal. Aug. 16, 2013) ........................... 11

*Swartz v. KPMG LLC*,
   476 F.3d 756 (9th Cir. 2007) .......................................................................... 11

*Stuart v. Cadbury Adams USA, LLC*,
   458 F. App'x 689 (9th Cir. 2011) ...................................................................... 6

*Thomas v. Costco Wholesale Corp.*,
   No. 12-2908, 2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ................... 11, 12, 13

*Tomek v. Apple, Inc.*,
   No. 11-2700, 2012 WL 2857035 (E.D. Cal. July 11, 2012) ........................... 13

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 11

*Wilson v. Frito-Lay N. Am., Inc.*,
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) .............................................. 12

*Wright v. Gen. Mills, Inc.*,
   No. 08-1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ................. 3

**OTHER AUTHORITIES**

21 C.F.R. § 133.169 ................................................................................. 3, 6

American Dairy Products Institute, Natural Cheese, *available at*
http://www.adpi.org/dairyproducts/cheese/naturalcheese/tabid/106/
default.aspx ........................................................................................... 4, 6

California Milk Advisory Board, Cheese, *available at*
http://www.californiadairypressroom.com/products/cheese ................. 4, 6

Center for Disease Control, Arsenic, *available at*
http://www.cdc.gov/biomonitoring/pdf/Arsenic_FactSheet.pdf ............. 9

Emission Factor Documentation for AP-42 Section 9.6.1, Natural and
Processed Cheese, Final Report for U.S. Environmental Protection Agency
(July 1997), *available at*
http://www.epa.gov/ttnchie1/ap42/ch09/bgdocs/b9s06-1.pdf .................. 3

Food and Drug Administration, Cheeses and Related Cheese Products;
Proposal to Permit the Use of Ultrafiltered Milk, 70 Fed. Reg. 60751 (Oct. 19,
2005) ...................................................................................................... 3, 6

Food and Drug Administration, Mushroom toxins: Amanitin, Gyromitrin,
Orellanine, Muscarine, Ibotenic Acid, Muscimol, Psilocynbin, Coprine, *in* Bad
Bug Book: Handbook of Foodborne Pathogenic Microorganisms and Natural
Toxins (2012), *available at* http://www.fda.gov/downloads/Food/Foodborne
IllnessContaminants/UCM297627.pdf ...................................................... 9

Food and Drug Administration, Tetrodotoxin, *in* Bad Bug Book: Handbook of
Foodborne Pathogenic Microorganisms and Natural Toxins (2012), *available at*
http://www.fda.gov/downloads/Food/FoodborneIllnessContaminants
/UCM297627.pdf ...................................................................................................9

Mark E. Johnson, et al., Reduction of Sodium and Fat Levels in Natural and
Processed Cheeses:  Scientific and Technological Aspects, 8 COMPREHENSIVE
REVS. FOOD SCI. & FOOD SAFETY 252 (June 8, 2009).......................................4, 6, 9

National Dairy Council, cheese & nutrition, *available at*
http://www.nationaldairycouncil.org/SiteCollectionDocuments
/education_materials/cheese/Health%20Professional%20Cheese%20Nutrition
%20Brochure%20Final.pdf ...............................................................................4, 6

United States Department of Agriculture, How to Buy Cheese, *available at*
http://www.ams.usda.gov/AMSv1.0/getfile?dDocName= STELDEV3002488...4, 6

## <u>INTRODUCTION</u>

This lawsuit is based on a deliberate and unreasonable misreading of the name of a product – Kraft Natural Cheese Shredded Fat Free Cheddar Cheese.  Plaintiffs claim that they believed that this cheese product was made from *only* natural ingredients.  Much to their purported dismay, they claim that they later discovered that Kraft Natural Cheese Shredded Fat Free Cheddar Cheese has artificial coloring (as disclosed in the ingredient list on its packaging).

But Kraft Natural Cheese Shredded Fat Free Cheddar Cheese has *never* been labeled or advertised as "*all* natural," "*100%* natural," or containing only natural ingredients and coloring.  Rather, the term "natural cheese" is used to distinguish it from "processed cheese," which is made by combining natural cheeses with other ingredients, such as butter, water, or powdered milk.

For decades, the U.S. government has recognized the difference between "natural cheese" (which is made directly from milk) and "processed cheese" (which is an amalgamation of different cheeses and ingredients).  Consumers, too, understand this distinction.  For example, the ubiquitous plastic-wrapped single slices of cheese are described as "processed" or "prepared" cheese on the packaging in accordance with federal regulations, to distinguish them from "natural cheese."

Simply put, a reasonable consumer would not be misled by the name of the product, Kraft Natural Cheese Shredded Fat Free Cheddar Cheese.  Plaintiffs fixate on a single word — "natural" — in the name of the product and try to imply that it means "*100%* natural" or "*all* natural."  But the product never uses those phrases.  A federal district court in the Ninth Circuit dismissed an analogous case in which the plaintiff latched onto a single word — "raw" — in the name of a product (Sugar in the Raw) to argue that she was misled into believing it was raw, unprocessed sugar.  The court rejected that argument, ruling that it was unreasonable to focus on a single word in the name of the product.  It is equally unreasonable here for Plaintiffs to latch onto a single word out of context in an attempt to blot-out a decades-long understanding of

the term "natural cheese."

Even if this Court were to read the word "natural" in isolation and then re-write it to mean "100% natural" or "all natural," Plaintiffs' claim still fails because they have failed to offer a plausible definition of "natural" in the context of packaged, fat free cheese products.   In the past year, two federal courts in this District have dismissed "all natural" lawsuits on the ground that there is no uniform or widely accepted definition of "natural."   Likewise here, Plaintiffs have not articulated any plausible definition of "natural" in the context of a packaged cheese product that has been processed to remove fat to make it fat-free.

## BACKGROUND

### I.   Plaintiffs' Bare-Bones Allegations.

Plaintiffs claim the use of the phrase "Natural Cheese" on the label of Kraft Natural Cheese Shredded Fat Free Cheddar Cheese misleads consumers into believing that the product "has no artificial ingredients or characteristics" and that "the product will be healthier, safer and/or produced to a higher standard."   Compl. ¶ 33.



Ex. 1.[1]  They claim that the product name is false because the cheese contains artificial coloring (as disclosed in the ingredient list).  Compl. ¶ 33.

## II.  The Phrase "Natural Cheese" Has a Clearly Defined Meaning.

The term "natural cheese" has been used for decades to describe cheese made directly from milk and to distinguish it from "processed cheese," which is made by mixing and cooking different varieties of cheese along with other ingredients.

The U.S. government has long recognized the differences between "natural cheese" and "processed cheese."  Federal guidance and regulations describe "natural cheese" as being made directly from milk, while "processed cheese" is defined as a combination of cheese commingled with other ingredients that impart unique properties, such as the ability to melt more rapidly when heated.  *See, e.g.*, 21 C.F.R. § 133.169 (defining "Pasteurized Process Cheese"); Cheeses and Related Cheese Products; Proposal to Permit the Use of Ultrafiltered Milk, 70 Fed. Reg. 60751 (Oct. 19, 2005) (discussing "natural cheese" made directly from milk).  As explained on the website of one federal agency:

> The modern manufacture of **natural cheese** consists of four basic steps: coagulating, draining, salting, and ripening.  **Processed cheese** manufacture incorporates extra steps, including cleaning, blending, and melting. . . .  Several varieties of natural cheese may be mixed, and powdered milk, whey, cream or butter, and water may be added [to make processed cheese].

Ex. 2, Emission Factor Documentation for AP-42 Section 9.6.1, Natural and Processed Cheese, Final Report for U.S. Environmental Protection Agency (July

---

[1] Exhibits 1-10 are attached to the concurrently-filed Request for Judicial Notice; *see Wright v. Gen. Mills, Inc.*, No. 08-1532, 2009 WL 3247148, at *4-5 (S.D. Cal. Sept. 30, 2009) (taking judicial notice of and incorporating by reference product labels and packaging items that served as basis for the allegations in plaintiff's complaint).

1997), *available at* http://www.epa.gov/ttnchie1/ap42/ch09/bgdocs/b9s06-1.pdf (emphases added). Numerous other governmental agencies, industry organizations, and experts have described the differences between "natural cheese" and "processed cheese."[2]

## **ARGUMENT**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where a plaintiff's complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See, e.g.*, *City of Arcadia v. U.S. Envtl. Prot. Agency*, 411 F.3d 1103, 1106 n.3 (9th Cir. 2005). Although factual allegations are accepted as true, courts "do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation omitted).

Under the Supreme Court's heightened plausibility standard for pleading, a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must allege sufficient facts to "state a claim to relief that is plausible on its

---

[2] *See, e.g.*, Ex. 3, U.S. Dep't of Agriculture, How to Buy Cheese (discussing the differences between "natural cheese" and "pasteurized process cheese"); Ex. 4, American Dairy Products Institute, Natural Cheese; Ex. 5, California Milk Advisory Board, Cheese (defining "Natural cheese" as "a term used to describe cheese that is made from milk to which salt, enzymes and flavorings can be added. It is the result of the fermentation of milk by adding starter culture"); Ex. 6, National Dairy Council, cheese & nutrition (explaining that "[c]heese can be natural or blended," and that "[n]atural cheese such as Cheddar is produced directly from milk," while "[p]asteurized blended cheese, process cheese, cheese foods, cheese spreads, and cold-pack cheeses are made by blending one or more different kinds of natural cheese into a homogenous mass"); Ex. 7, Johnson, et al., Reduction of Sodium and Fat Levels in Natural and Processed Cheeses: Scientific and Technological Aspects, 8 COMPREHENSIVE REVS. FOOD SCI. & FOOD SAFETY 252, 253 (June 8, 2009) (discussing the distinctions between "natural cheese" and "processed cheese").

face." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Further, Plaintiffs' claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1126 (9th Cir. 2009). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement and why it is false." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original; internal quotations and citations omitted).

## I.     Plaintiffs Fail to Plausibly Allege that a "Significant Portion of the General Consuming Public" Would Be Deceived by "Natural Cheese."

To state a claim for false advertising under the UCL, FAL, or CLRA, Plaintiffs must allege that Kraft made statements likely to deceive a reasonable consumer. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the advertisement must be "such that *it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.*" *Id.* (emphasis added).

Whether a representation is "likely to deceive" a reasonable consumer is evaluated in the context of the label or advertisement as a whole, not on the basis of "a single out-of-context phrase found in one component of [a product's] label." *Hairston v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012). "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Id.*

Here, the "natural cheese" statement is not likely to deceive a reasonable consumer and Plaintiffs' theory of the case is not plausible.

## A. Consumers, Federal Agencies, and the Industry Recognize that "Natural Cheese" Distinguishes a Product from "Processed Cheese."

Plaintiffs adopt an unreasonable and implausible reading of the name of the product — Kraft Natural Cheese Shredded Fat Free Cheddar Cheese— to allege deception. But a court must view the challenged statements from the perspective of a "reasonable consumer," not "the unwary consumer" or "a least sophisticated consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011). Federal courts apply "common sense" and dismiss lawsuits where the complaint has not articulated why the challenged statements are misleading. *See Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690-91 (9th Cir. 2011) (ruling that "[o]nly an unreasonable consumer would be confused or deceived by Cadbury's failure to clarify that Trident White gum works only if consumers continue to brush and floss regularly"). Further, a court should not review specific statements in isolation but should instead examine the full packaging in context in determining whether a reasonable consumer would be misled. *Hairston*, 2012 WL 1893818, at *4. Here, Plaintiffs' objections are not plausible.

Plaintiffs contend that Kraft Natural Cheese Shredded Fat Free Cheddar Cheese is false because it is labeled "natural cheese" and contains artificial coloring. But the term "natural cheese" has been used for decades to distinguish cheese made directly from milk (*e.g.*, cheddar cheese) from "processed cheese," which is made by mixing and cooking cheese with other ingredients (*e.g.*, single, individually-wrapped slices of cheese that melt easily). *See supra* n. 2. In other words, "natural cheese" is made directly from milk, while "processed cheese" is made by combining cheese and other ingredients that impart unique properties. *See id.*; 21 C.F.R. § 133.169 (defining "Pasteurized Process Cheese"); 70 Fed. Reg. 60751 (Oct. 19, 2005) (discussing "natural cheese" made directly from milk).

In short, Plaintiffs are playing a semantics game by latching onto the word "natural." A federal court rejected a similar tactic in *Rooney v. Cumberland Packing Corp.*, No. 12-33, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012). The plaintiff there alleged that she was deceived into believing that "Sugar in the Raw" contained raw, unprocessed sugar because of the phase "in the raw." *Id.* at *4. But the court dismissed the complaint on a Rule 12(b)(6) motion, ruling that no reasonable consumer would be misled into believing that "Sugar in the Raw" meant that the product was raw, unprocessed sugar because the package stated that the sugar was turbinado sugar, a term widely known in the industry as processed cane sugar. *See id.* at *4. The court refused to look at the phrase "in the raw" in isolation, and instead relied on industry understanding to rule that consumers would understand that Sugar in the Raw was processed sugar, despite the name of the product. *See id.*

Here, it is not just the industry, but also the U.S. government, that has long recognized that "natural cheese" means that the cheese was made directly from milk and is not "processed cheese." Like in *Rooney*, Plaintiffs cannot take a single word out of context and discard a decades-long understanding of the term "natural cheese."

**B. Consumers are Not Likely to Be Deceived by the Term "Natural Cheese" on the Label of Kraft Shredded Fat Free Cheddar Cheese.**

Even if the Court were to disregard that the phrase "Natural Cheese" has a specific and well-defined meaning and interpreted the single word "Natural" to mean "All Natural" or "100% Natural," it is not likely that reasonable consumers would be misled by the name of the product. Plaintiffs' failure to articulate a workable or plausible definition of "natural" dooms their case.

There is no question that consumers have widely varying definitions of the term "natural." Stated differently, "there is no single, controlling definition of the word 'natural.'" *Jones v. ConAgra Foods, Inc.*, No. 12-1633, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014). And because "there is no fixed meaning for the word 'natural,'" *id.* at *14, a complaint is subject to dismissal where the plaintiff "fails to

offer an objective or plausible definition" of this term.  *Pelayo v. Nestle USA, Inc.*, --- F. Supp. 2d ----, 2013 WL 5764644, at *4 (C.D. Cal. 2013).

In *Pelayo v. Nestle*, the plaintiff challenged the term "All Natural" found on a box of pasta, claiming that certain ingredients were artificial.  *Id.* at *1.  In dismissing the lawsuit at the pleading stage, the court said that the plaintiff offered "conflicting" and "implausible" definitions of "natural," and held that "[g]iven the FTC's findings that the term 'natural' can be used in numerous contexts, it is implausible that 'a significant portion of the general consuming public or of targeted consumers' would be deceived or misled by the use of the term 'All Natural' on the Buitoni Pastas." *Id.* at *5.

Similarly, in *Balser v. Hain Celestial Group, Inc.*, another judge in this District dismissed a false advertising lawsuit challenging "natural" cosmetics.  No. 13-5604, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013).  The court held that "it is undisputed that 'natural' is a vague and ambiguous term," and that the plaintiffs' proposed definition of natural as "existing in or produced by nature" was "implausible as applied to the products at issue:  shampoos and lotions do not exist in nature, there are no shampoo trees, [and] cosmetics are manufactured." *Id.* at *1.

Like in *Pelayo* and *Balser*, Plaintiffs here have failed to offer a plausible understanding of the term "natural" in the context of packaged fat free shredded cheese.  They first assert that labeling Kraft Shredded Fat Free Cheddar Cheese as "Natural Cheese" is misleading because it leads consumers "to believe the Product has no *artificial* ingredients or characteristics."  Compl. ¶ 33 (emphasis in original).

But Plaintiffs' proposed definition of "natural" is neither "objective" nor "plausible."  First, having failed to define "artificial ingredients or characteristics," the definition is just as vague and meaningless as the term "natural." *Cf. Balser*, 2013 WL 6673617.  Second, it is implausible that a consumer would believe that packaged, fat free cheddar cheese has no "artificial . . . characteristics."  Among other things, consumers understand that milk contains natural fats and, accordingly, "fat free"

cheese is subjected to processing to remove those fats.  *See, e.g.*, Ex. 7, Reduction of Sodium and Fat Levels in Natural and Processed Cheeses at 252-53 (explaining that consumers "perceive[]" cheese "as being high in fat" and that "the only source of fat in cheese is that naturally occurring in the cream portion of milk"); *cf. Pelayo*, 2013 WL 5764644, at *4 (rejecting proposed definition of "natural" as meaning "produced or existing in nature" because consumers are aware that pasta is not a naturally-occurring product).

Plaintiffs next allege that consumers read the "Natural Cheese" label as meaning "the Product will be healthier, safer and/or produced to a higher standard." Compl. ¶¶ 33.  But this definition, too, is imprecise and implausible.  Many "natural" substances are unsafe or unhealthy.  Take arsenic, for example.  "Arsenic is a naturally occurring element" — yet reasonable consumers understand that large doses of arsenic are neither safe nor healthy.[3]  Likewise, it is common knowledge that many mushrooms are poisonous, and that pufferfish contains harmful toxins.[4]

Moreover, Plaintiffs do not allege that Kraft Shredded Fat Free Cheddar Cheese is labeled as "*all* natural," a phrase that some courts have interpreted as reasonably suggesting a product contains *only* natural ingredients.  This distinction is notable because a reasonable consumer may interpret "all natural" or "100% natural" as

---

[3] *See, e.g.*, Ex. 8, Center for Disease Control, Arsenic (explaining that arsenic may cause, *inter alia*, "skin disorders and increased risks for diabetes, high blood pressure, and several types of cancer").

[4] *See, e.g.*, Ex. 9, FDA, Mushroom toxins: Amanitin, Gyromitrin, Orellanine, Muscarine, Ibotenic Acid, Muscimol, Psilocynbin, Coprine, *in* Bad Bug Book: Handbook of Foodborne Pathogenic Microorganisms and Natural Toxins (explaining that "[s]ome wild mushrooms contain poisons that can cause illness, with symptoms ranging from mild to deadly," and advising consumers "not to eat" wild mushrooms); Ex. 10, FDA, Tetrodotoxin, *in* Bad Bug Book: Handbook of Foodborne Pathogenic Microorganisms and Natural Toxins (explaining that "pufferfish . . . contain a poison that's deadly to humans, if the fish aren't prepared by a highly trained expert").

distinct from the un-modified term "natural."  Thus, for example, the court in *Bruton v. Gerber Products Co.* dismissed a claim alleging that the phrase "Made with 100% Natural Fruit" falsely or misleadingly suggested that the product was "all natural." 961 F. Supp. 2d 1062, 1098 (N.D. Cal. 2013).  As Judge Koh explained:

> If Defendants' labels claimed that the products were "100% natural," Bruton's allegations might be sufficient.  However, Bruton fails to explain why a label claiming that a product is "Made with 100% Natural *Fruit*" plausibly implies that the *entire* product—which contains ingredients other than fruit—is free of synthetic ingredients or ingredients not normally expected to be in food.

*Id.*; *see also Hairston*, 2012 WL 1893818, at *4 (dismissing claim that label falsely implied product contained only natural ingredients, because the "label does not simply state that it is 'all natural' without elaboration or explanation" but, rather, "all natural with vitamins").  Likewise, here, Plaintiffs fail to explain why reasonable consumers would interpret the phrase "Natural Cheese" as implying that the product contains only 100% natural ingredients.

Finally, there is no dispute that the ingredient list and nutrition panel truthfully disclose the ingredients and nutritional content of the shredded cheese.  Consumers reading the labels can, therefore, easily determine exactly what they are consuming. *See McKinniss v. Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) ("[a] reasonable consumer" concerned about the ingredients in cereal "would . . . be expected to peruse the product's contents simply by reading the side of the box containing the ingredient list"); *Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1137 (N.D. Cal. 2014) (dismissing claim alleging consumers would be misled by "All Natural" label where ingredient list "explicitly discloses that Defendant adds 'fruit or vegetable juice [*for color*]'") (alterations in original).

## II.   **Plaintiffs Fail to Plead their Claims with the Requisite Particularity.**

Because the gravamen of Plaintiffs' complaint is that the Kraft cheese labeling is deceptive, "Plaintiffs must demonstrate actual reliance and economic injury" with particularity as required under Rule 9(b).  *Kane v. Chobani, Inc.*, No. 12-2425 2013 WL 5289253, at \*6, \*7 n.4 (N.D. Cal. Sept. 19, 2013); *see also Park v. Welch Foods, Inc.*, No. 12-6449, 2013 WL 5405318, at \*4 (N.D. Cal. Sept. 26, 2013).  In other words, Plaintiffs must "state with clarity the 'who, what, when, where, and how' of the fraudulent conduct . . . and provide an unambiguous account of the 'time, place, and specific content of the false representations.'"  *Smedt v. Hain Celestial Grp., Inc.*, No. 12-3029, 2013 WL 4455495, at \*4 (N.D. Cal. Aug. 16, 2013) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) and *Swartz v. KPMG LLC*, 476 F.3d 756, 764 (9th Cir. 2007)).

Accordingly, Rule 9(b) requires Plaintiffs to allege "*specifically* when and where Plaintiffs purchased the particular . . . food products at issue" and "how Plaintiffs' purchase decisions were driven by the alleged misrepresentations on the packaging labels."  *Park*, 2013 WL 5405318, at \*4.  Plaintiffs have pled none of this information.  Indeed, Plaintiffs have not even pled *which* ingredients supposedly render the label false or misleading or *which* "advertising" they challenge as improper.

First, Plaintiffs fail to identify with any certainty the ingredients that allegedly render the "Natural Cheese" statement false or misleading.   They assert that the Kraft Shredded Fat Free Cheddar Cheese label is false or misleading because the Product "contain[s] artificial ingredients, flavor and/or coloring," and seek to certify a class on this basis.  Compl. at 1 & ¶ 19.  However, with the exception of "artificial coloring," (*id.* ¶ 18), they never identify with precision the ingredients that allegedly rendered the Product unsatisfactory.   Courts have dismissed similar complaints for failure to identify a "finite and particular" list of products or ingredients that form the basis of the lawsuit.  *See, e.g.*, *Thomas v. Costco Wholesale Corp.*, No. 12-2908, 2013 WL 1435292, at \*7-8 (N.D. Cal. Apr. 9, 2013) (holding complaint challenging non-

1   exclusive list of products failed to satisfy Rule 9(b) because "the use of the term 'such

2   as' indicates that these references are only used as an example of one of the apparently

3   many products" challenged by the plaintiffs).

4           Like the phrase "such as" in *Thomas v. Costco*, the phrase "artificial

5   ingredients, flavor and/or coloring" (Compl. at 1) fails to put Kraft on notice of the

6   precise ingredients that, according to Plaintiffs, render the phrase "Natural Cheese"

7   false or misleading.  The use of this "non-definite" phrase "creates an ambiguity such

8   that Defendant – or the Court, for that matter – would have to draw its own inferences

9   to determine the [ingredients] that are subject to the allegations." *Thomas*, 2013 WL

10   1435292, at *8.  "Drawing such inferences about the particular misconduct that is

11   alleged to constitute fraud, deception, or misrepresentation is something the

12   heightened Rule 9 pleading standard of particularity and specificity seeks to avoid."

13   *Bishop v. 7-Eleven, Inc.*, No. 12-2621, 2013 WL 4014174, at *4-5 (N.D. Cal. Aug. 5,

14   2013) (dismissing complaint containing "ambiguity and non-specificity" as to

15   challenged products).[5]

16           Second, Plaintiffs allege that Kraft "made numerous misrepresentations . . .

17   including, but not limited to, print media, and internet advertisements, and on the

18   Product's packaging and labeling."  Compl. ¶ 11; *see also id.* ¶ 13 (alleging Plaintiffs

19   "relied upon the labeling, advertising and other promotional material, which states the

20   Product is 'natural'").  But they never identify in any way the marketing materials and

21   advertisements that allegedly duped them into purchasing Kraft Shredded Fat Free

22   Cheddar Cheese.  Kraft is entitled to know the materials and representations that form

23

24   _____

25   [5] *See also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141 (N.D. Cal.
     2013) ("the Court is not inclined to pore over each ingredient list and guess" as to how
26   the particular ingredients potentially render each product mislabeled); *Kane*, 973 F.
     Supp. 2d at 1137 (dismissing "all natural" claim under Rule 9(b) where plaintiffs
27   failed to "explain with any specificity what they contend is 'unnatural' about [the
     challenged] ingredients").
28

the basis of Plaintiffs' suit.  *See Thomas*, 2013 WL 1435292, at *6 ("Plaintiffs must . . . provide an unambiguous account of the 'time, place, and specific content of the false representations.").  Moreover, determining the universe of the challenged materials is critical because Plaintiffs "do[] not have standing to assert claims based on advertisements and websites that [they] did not view personally."  *Bruton*, 961 F. Supp. 2d at 1091.

Finally, Plaintiffs never allege that they actually *relied* on the "Natural Cheese" language in purchasing the product.  The closest they come to alleging reliance is a boilerplate assertion that "Plaintiffs relied upon the labeling, advertising, and other promotional material, which states the Product is 'natural.'"  Compl. ¶ 13.  In other words, Plaintiffs vaguely state that they relied on some, unidentified set of "promotional material," which allegedly included the word "natural."  What they *do not* allege is that they personally read the word "natural," and that this term influenced their purchasing decision.  Merely purchasing a product with a label bearing an allegedly misleading statement is insufficient to satisfy Article III standing requirements.  *See, e.g.*, *Maple v. Costco Wholesale Corp.*, No. 12-5166, 2013 WL 5885389, at *5-6 (E.D. Wash. Nov. 1, 2013) (dismissing claims where plaintiff failed to plead that he read and relied upon the phrase "natural tonic" in purchasing the challenged product).  Plaintiffs' vague and conclusory assertions of reliance fail to satisfy their burden of pleading reliance with particularity.  *See, e.g.*, *Tomek v. Apple, Inc.*, No. 11-2700, 2012 WL 2857035, at *3 (E.D. Cal. July 11, 2012) ("the mere assertion of 'reliance' is insufficient"; rather, "[t]he plaintiff must allege the specifics of his or her reliance on the misrepresentation") (quoting *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).

In short, Plaintiffs "fail[] to allege . . . the particular circumstances surrounding [the challenged] representations."  *Kearns*, 567 F.3d at 1126.  Plaintiffs never specify *which* "advertising and promotional material," or even which portion of the "labeling," they allegedly "relied upon" in making their claimed purchases.  *See*

Compl. ¶ 13.   Nor do Plaintiffs specify *where* they viewed the alleged misrepresentations or *when* they viewed the challenged statement or purchased the challenged products (*i.e.*, whether they read the language before they purchased the products).  The Complaint should be dismissed for failure to satisfy Rule 9(b).

## **CONCLUSION**

For the foregoing reasons, Kraft respectfully requests that the Court dismiss the Complaint in its entirety.  Because the purported misrepresentation is not actionable as a matter of law, granting leave to amend would be futile.  Accordingly, Plaintiffs' Complaint should be dismissed with prejudice.

Dated:  July 9, 2014                                JENNER & BLOCK LLP

                                                     /s Kenneth K. Lee_____
                                                    By: Kenneth K. Lee

                                                    Attorneys for Defendant
                                                    Kraft Foods Group, Inc.