UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **ORDER RE DEFENDANT'S RENEWED MOTION TO STAY CASE PENDING THE FDA ACTION ON "NATURAL" GUIDANCE [DKT. 262]**

**I.   Introduction**

On May 7, 2014, Claudia Morales and Mocha Gunaratna (collectively, "Plaintiffs") brought this action in the Los Angeles Superior Court against Kraft Foods Group, Inc. ("Defendant" or "Kraft"). Plaintiffs allege that they were misled by the use of the term "natural cheese" on Kraft's "Natural Cheese Fat Free Shredded Fat Free Cheddar Cheese" (the "Product"). SAC ¶¶ 12-20, Dkt. 40. Kraft removed the matter on June 6, 2014. Notice of Removal, Dkt. 1.

On November 7, 2014, the parties stipulated to Plaintiffs' filing a Second Amended Complaint ("SAC"). Dkt. 38. Plaintiffs did so on November 14, 2014. Dkt. 40. The SAC advances three causes of action: (1) false and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) false and misleading advertising in violation of Cal. Bus. & Prof. Code §§ 17500 et seq.; and (3) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. SAC, Dkt. 40.

On December 18, 2015, Kraft filed a Motion to Stay pending a decision by the federal Food and Drug Administration ("FDA") as to the definition of "natural" in food labeling and/or one by the Ninth Circuit in *Kosta v. Del Monte Foods, Inc.*, No. 15-16974 (9th Cir. filed Oct. 2, 2015), *Brazil v. Dole Food Co., Inc.*, No. 14-17480 (9th Cir. filed Dec. 17, 2014) and *Jones v. ConAgra Foods*, No. 14-16327 (9th Cir. filed July 14, 2014). Dkt. 97.[1] Kraft's motion was denied without prejudice to renewal based on new developments. Dkt. 135.[2]

---

[1] The Ninth Circuit has since published an opinion in which it reversed the entry of summary judgment that rejected the claims brought by the plaintiff in *Brazil*, and remanded the matter to the district court. *Brazil v. Dole Packaged Foods, LLC*, No. 14-17480, 2016 WL 5539863 (9th Cir. Sept. 30, 2016). *Jones* has been stayed pending a decision by the Supreme Court in *Microsoft Corp. v. Baker*, No. 15-457. No. 14-16327, Dkt. 75. At the present time, *Kosta* remains pending before the Ninth Circuit. No. 15-16974.

[2] At the hearing on the first Motion to Stay, the Court stated that it would issue a separate and more detailed order as to the basis for the denial. Dkt. 135. Such detail is provided in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

On October 27, 2016, Kraft renewed the Motion to Stay ("Motion" (Dkt. 262)). It sought this relief in light of the anticipated rulemaking by the FDA as to the meaning of the term "natural" in food labeling. Plaintiffs opposed the Motion (Dkt. 268), and Kraft replied. Dkt. 270. It was then determined that the Motion was appropriate for submission without a hearing pursuant to Local Rule 7-15. Dkt. 267. For the reasons stated in this Order, the Motion is **DENIED**.

**II.     Factual and Procedural Background**

The SAC alleges that Plaintiffs were misled by the use of the term "natural cheese" on the label of the Product. SAC ¶¶ 12-20. Plaintiffs allege that they would not have purchased the Product if they had known that it contains artificial coloring. *Id.* The SAC further alleges that the FDA "explicitly objects to use of the term 'natural' if the food contains added color, artificial flavors, or synthetic substances, such as the Product." *Id.* at ¶ 43. It also alleges that "[t]he FDA considers use of the term 'natural' on a food label to be truthful and non-misleading only when 'nothing artificial or synthetic . . . has been included in, or has been added to, a food that would not normally be expected to be in the food.'" *Id.* ¶¶ 44 (quoting *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 FR 2302, *2407 (January 6, 1993)).

The SAC notes that, in 1993, the FDA explained why it had not adopted a rule as to the meaning of the term "natural" in food labeling:

> Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for "natural" at this time. The agency will maintain its current policy . . . not to restrict the use of the term "natural" except for added color, synthetic substances, and flavors . . . . Additionally, the agency will maintain its policy . . . regarding the use of "natural," as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Further, at this time the agency will continue to distinguish between natural and artificial flavors . . . .

*Id.* ¶ 45.

More than 20 years later, on November 12, 2015, the FDA announced that it was commencing regulatory review of the use of the term "natural" on food product labels. Ex 1 to Declaration of Kenneth K. Lee ("Lee Decl."), Dkt. 263-1 (*Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 FR 69905-01 (November 12, 2015)). The FDA requested public comments on the use of the term "natural" in food labeling, "including when, if ever, the use of the term is false or misleading." *Id.* at *69908. The FDA invited comment on several specific questions, including:

- Should we define, through rulemaking, the term "natural?" Why or why not?
- Should we prohibit the term "natural" in food labeling? Why or why not?
- If we define the term "natural," what types of food should be allowed to bear the term "natural?"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

- We are interested in any data or other information to suggest that consumers associate, confuse, or compare the term "natural" with "healthy." We have a regulation that defines the term "healthy" when used as an implied nutrient content claim with specific conditions related to the food's nutrient profile that must be met in order to use the term on the label or in labeling of a food (see § 101.65(d)). We are interested in data and other information about consumers' understanding of foods labeled "natural" versus "healthy." Is the term "natural" on food labels perceived by consumers the same way as "healthy?" Or is "natural" perceived by consumers to be "better" (or not as good as) "healthy?" Do consumers view "natural" and "healthy" as synonymous terms? Please provide consumer research or other evidence to support your comment.
- Should manufacturing processes be considered in determining when a food can bear the term "natural?" For example, should food manufacturing processes, such as drying, salting, marinating, curing, freezing, canning, fermenting, pasteurizing, irradiating, or hydrolysis, be a factor in defining "natural?"
- Should the term "natural" only apply to "unprocessed" foods? If so, how should "unprocessed" and "processed" be defined for purposes of bearing the claim? If the term natural should include some processing methods, what should those methods be? In making determinations related to processing, should one look at the process to make a single ingredient of a food, or does one evaluate the process done to the formulated finished food product (or both)?
- The current policy regarding use of the term "natural" hinges in part on the presence or absence of synthetic ingredients. For example, under the current policy synthetic forms of Vitamin D would not be used in a food claiming to be "natural," whereas naturally sourced Vitamin D (e.g., from salmon or egg yolks) could be. Should the manner in which an ingredient is produced or sourced affect whether a food containing that ingredient may be labeled as "natural?" Please explain your reasoning.

*Id.* at *69908-09.

In the notification of request for comments, the FDA also stated that it had

> a longstanding policy for the use of the term "natural" on the labels of human food. We previously considered establishing a definition for the term "natural" when used in food labeling. In the preamble of a proposed rule we published in the Federal Register (56 FR 60421, November 27, 1991), we stated that the word "natural" is often used to convey that a food is composed only of substances that are not manmade and is, therefore, somehow more wholesome. We also said that we have not attempted to restrict use of the term "natural" except for added color, synthetic substances, and flavors under § 101.22 (21 CFR 101.22) (56 FR 60421 at 60466). Further, we said that we have considered "natural" to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there (56 FR 60421 at 60466).

*Id.* at *69906.

The deadline for comments was originally set for February 10, 2016. Ex. 2 to Lee Decl., Dkt. 263-2 at 2 (*Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

*Comments; Extension of Comment Period*, 80 FR 80718-01 (December 28, 2015)). In December 2015, the deadline was extended to May 10, 2016. *Id.*

During the comment period, the FDA received 7690 submissions. Ex. 3 to Lee Decl. (regulations.gov web page on Use of the Term "Natural" in the Labeling of Human Food Products). Defendants submitted several examples of comments that state that "natural cheese" is a term of art in the dairy industry (*see, e.g.*, Ex. 5 to Lee Decl., Dkt. 263-5 (letter from Grocery Manufacturers Association)) and that coloring agents derived from natural sources should be considered natural (*see, e.g., id.*; Ex. 6 to Lee Decl., Dkt. 263-6 (comment from Lynn Lawler); Ex. 7 to Lee Decl., Dkt. 263-7 (comment from Michael Cowell)).

### III.   Analysis

#### A.   Legal Standard

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). Under the doctrine, a court may refer an issue "within the special competence of an administrative agency" to the agency, and stay or dismiss without prejudice the underlying action pending agency review. *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993). "Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts. Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002).

"Not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction." *Astiana*, 783 F.3d at 760. This doctrine "applies in a limited set of circumstances," and is "not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Clark*, 523 F.3d at 1114 (internal quotation marks omitted). "Instead, it is to be used only if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (citation and internal quotation marks omitted). "The 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) (citation omitted).

"[T]he doctrine of primary jurisdiction is committed to the sound discretion of the court . . . ." *Syntek*, 307 F.3d at 781. However, in determining whether this doctrine should be invoked, courts typically consider "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).

Additionally, courts have an inherent power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248,

Case 2:14-cv-04387-JAK-PJW   Document 273   Filed 12/06/16   Page 5 of 7   Page ID #:8826

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | | Date | December 6, 2016 |
|---|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | | |

254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

      **B.**    **Application**

Defendants argue that a stay is merited for three reasons. *First*, the Ninth Circuit has "directed" district courts to stay cases involving challenges to "natural" labels "until such time as the [FDA] completes its proceedings" on the use of the term "natural" in food labeling. Motion, Dkt. 262 at 6 (citing *Kane v. Chobani*, 645 F. App'x 593, 594 (9th Cir. 2016)). *Second*, the comments submitted during the notice and comment period "confirm that the FDA's forthcoming rulemaking will have a direct bearing on Plaintiffs' case-in-chief at trial." *Id.* at 6. Defendants then argue that the FDA will be required to respond to comments stating that "natural cheese" is a term of art that is used to describe cheese made directly from milk. *Id.* They also argue that Plaintiffs have presented no evidence other than the 1993 guidance by the FDA to support the claim that the term "natural cheese" is either material or deceptive. *Id.* at 7. *Third*, the procedural posture of the case has changed significantly since the previous request for a stay was denied. *Id.* at 7-8. None of these arguments is convincing.

In *Kane*, plaintiffs appealed the dismissal of a putative class action in which the operative complaint alleged that "Chobani deceptively and unlawfully labels its yogurt as 'natural' in violation of FDA regulations, and that Chobani deceptively and unlawfully uses the term 'evaporated cane juice' to describe its yogurt's added sugar ingredient." *Kane*, 645 F. App'x at 594. The Ninth Circuit remanded the action directing the district court to enter a stay under the primary jurisdiction doctrine. *Id.* As the court explained:

> The delineation of the scope and permissible usage of the terms "natural" and "evaporated cane juice" in connection with food products "'implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'"

*Id.* (quoting *Astiana*, 783 F.3d at 760)).

Defendants note that several other district courts have also issued stays pending the completion of the rulemaking by the FDA. *See, e.g., Viggiano v. Johnson*, No. CV-14-7250-DMG-MRWx, 2016 WL 5110500, at *2 (C.D. Cal. June 21, 2016) ("Since the FDA commenced regulatory proceedings, district courts have followed the Ninth Circuit's lead in applying the primary jurisdiction doctrine in these types of actions where the term 'natural' is at issue."); *Mains v. Whole Foods Mkt., Inc.*, No. 5:12-CV-05652-EJD, 2016 WL 5791414, at *2 (N.D. Cal. Apr. 18, 2016) (staying case pending resolution by Ninth Circuit of *Jones*, *Brazil*, and *Kosta* but noting that "*Kane* provides another basis to stay this case since it involves similar allegations"); *In re KIND LLC "Healthy & All Natural" Litig.*, No. 15-MC-2645 (WHP), 2016 WL 4991471, at *6 (S.D.N.Y. Sept. 15, 2016) (concluding that the primary jurisdiction test that applies within the Second Circuit weighed in favor of stay pending "natural" rulemaking).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

Plaintiffs attempt to distinguish *Kane* and the other cases. They argue that, in contrast to cases in which a stay was issued, the FDA's guidance regarding the labeling of products containing artificial color is "long-standing and unambiguous." Opposition at 15.

The question presented in this action is different than the one at issue in *Kane*. Thus, the question here is not whether Kraft has violated FDA regulations. *See Kane*, 645 F. App'x at 594; *see also Viggiano*, 2016 WL 5110500 at *2 ("[P]laintiffs asserted that defendant Chobani, Inc. 'deceptively and unlawfully' labeled its yogurt 'natural' in violation of FDA regulations, much like Viggiano does in the instant case concerning Nectresse."). Rather, in this case the question is whether the "natural cheese" label is deceptive to the reasonable consumer. *See* Dkt. 271 at 14-15. As stated in a prior Order in this action:

> FDA standards are not determinative of the ultimate question presented by the UCL, FAL, and CLRA claims. That issue is whether the reasonable consumer is likely to be deceived by product packaging. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 940 (9th Cir. 2008) (it does not follow that "compliance with certain FDA regulations would automatically shield [the defendant] from liability under . . . California statutes or tort claims").

*Id.* Further, although courts "assessing claims under the UCL, FAL, and CLRA have given some weight to defendants' compliance with FDA standards, rules, and regulations," (*id.*) this case does not present "technical and policy questions" of the sort that would compel the application of the primary jurisdiction doctrine. *See Kane*, 645 F. App'x at 594; *see also In re KIND*, 2016 WL 4991471 at *4 ("The Court is reluctant to declare that issues of alleged consumer deception are necessarily outside the conventional wisdom of judges (or even juries).").

Defendants' second argument in support of a stay fails for the same reason. To prevail on their claims, Plaintiffs must show that the term "natural cheese" is material to, and deceives, the reasonable consumer. Compliance with FDA regulations does not "automatically shield" Kraft from a claim under the relevant statutes. *See Williams*, 552 F.3d at 940. As noted in the December 2, 2016 Order in this action in which the parties' respective motions for summary judgment were denied, Plaintiffs have presented other evidence to support their claim that the reasonable consumer is likely to be misled by the use of the term "natural cheese" label, including their own testimony and internal Kraft documents obtained in discovery. Dkt. 271 at 11-13. They have also presented other evidence that the term "natural cheese" is material to the reasonable consumer, including the reports of their expert. *Id.* at 22-23.

Furthermore, what if any determination the FDA may make on this issue is unknown at this time. For example, it could decide once again not to take a position, or it could decide that the term "natural cheese" is a special one in some respect. However, such a decision may not preclude the claims that are presented in this action given the rule recognized in *Williams* as well as the aforementioned evidence.

Under these circumstances, the exercise of discretion with respect to the efficient management of this longstanding litigation does not warrant a stay at this time. *Astiana*, 783 F.3d at 760. There are several significant issues that have been set for review whose determination is not dependent on what action, if any, is taken by the FDA. They include Defendant's planned motion to decertify the class and to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV14-04387 JAK (PJWx) | Date | December 6, 2016 |
|---|---|---|---|
| Title | Claudia Morales, et al. v. Kraft Foods Group, Inc., et al. | | |

challenge Plaintiffs' expert through a *Daubert* process. Pretrial and trial dates have been reset as a result. Dkt. 272.

**IV.**     **Conclusion**

For the foregoing reasons, the Motion is **DENIED** without prejudice to its renewal based on new developments in the FDA process sufficient to satisfy the standards of Local Rule 7-18.

**IT IS SO ORDERED.**

                                                                                             :
                                                    Initials of Preparer    ak